Leslie Bryan Hart, Esq. (SBN 4932)
FENNEMORE CRAIG, P.C.
300 E. Second St., Suite 1510
Reno, Nevada 89501
Tel: 775-788-2228   Fax: 775-788-2229
lhart@fclaw.com

Scott J. Fisher, Esq. (Admitted *Pro Hac Vice*)
Karl R. Barnickol, Esq. (Admitted *Pro Hac Vice)*
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street, Suite 1700
Chicago, IL 60602
Tel: 312-269-8047 Fax: 312-980-0878
sfisher@nge.com; kbarnickol@nge.com

*Attorneys for Defendants Tahoe Resources, Inc., Elizabeth McGregor,
Mark Sadler, Ronald W. Clayton, and C. Kevin McArthur*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re:  TAHOE RESOURCES, INC. SECURITIES LITIGATION | CASE NO.:  2:17-cv-01868-RFB-NJK **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |

Plaintiff does not plead facts sufficient to show that: 1) Tahoe made any misrepresentation or omission in its public statements; 2) Defendants knew any of Tahoe's public statements were false or misleading when made; or 3) any purportedly misleading public statement or omission proximately caused his alleged loss.  To the contrary:

- the relevant risk – that the validity of the Escobal mining license was uncertain and could be adversely impacted by a subsequent court ruling – was specifically disclosed;

- Tahoe continued to disclose the relevant risk during the four years that the mine operated between issuance and suspension of the license;

- the public statements were based on facts available to Defendants and the public at the time and in light of the circumstances under which they were made;

- there is no support for a strong inference that Defendants knew or should have known that the license was "not legally issued" or that it would be suspended, until the Guatemalan Supreme Court's July 5, 2017 decision; and

- the court-order suspending the Escobal mining license – not a new disclosure of historic Xinka opposition to the mine – caused Tahoe's stock price to fall.

The securities laws do not require prescience; a company need not predict every adverse event that could hurt its business, particularly a situation where one government body reverses

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

14577564

another.  This Complaint attempts to concoct a securities fraud claim through hindsight and sympathetic allegations about the plight of the Xinka and dysfunction within the Guatemalan government, but it fails to confront Tahoe's adequate disclosures or allege plausible facts sufficient to state a claim.  The pleading defects are incurable, and the Complaint should be dismissed with prejudice.[1]

**I.      The Allegations Do Not Show Any Misleading Public Statements.**

**A.      There Is No Claim Because The Key Risk Was Disclosed.**

Tahoe's public statements were not misleading because the risk of license suspension was disclosed.  Even after the license was issued, Tahoe disclosed the ongoing risk that the Escobal mining license could be invalidated through an adverse court ruling.  Plaintiff concedes that Tahoe warned its investors of this risk:

> The *validity of the licenses* related to the Escobal mine can be *uncertain* and may be contested.  There is no *assurance that applicable governmental bodies will not revoke* or significantly alter the conditions of applicable licenses that are required by the Escobal mine.  Changes to Guatemalan laws, including new mining legislation or *adverse court rulings could materially and adversely impact our rights* to exploration and exploitation licenses necessary for the Escobal mine.

Compl. ¶154 (emphasis added).[2]  That is the very risk that unfortunately became a reality when the Guatemalan Supreme Court suspended the license on July 5, 2017.  *See In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 527 (S.D.N.Y. 2012) (plaintiff could not state an omission claim where disclosure informed it "that Defendants could engage in the very conduct of which Plaintiff complains.").  This disclosure is dispositive of the claims in this case, and no other or further disclosure was required.

**B.      The Law Does Not Require The Detail Demanded By Plaintiff.**

---

[1]      The PSLRA and its heightened pleading standard protect Defendants from expensive discovery until it is clear that Plaintiff can state a claim.  This Motion to Dismiss is subject to consideration in a way distinct from other Rule 12 motions.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320-21 (2007).

[2]      "Compl." refers to the Consolidated Amended Complaint [ECF No.  59]; "Mem." refers to Defendants' Memorandum in Support of their Motions to Dismiss [ECF No.  65]; and "Resp." refers to Plaintiff's Response to the Motion to dismiss [ECF No.  69].

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

2

14577564

Plaintiff wrongly insists that Tahoe should have disclosed *particular* information about the Xinka in its risk factors. "[W]here there is disclosure that is broad enough to cover a specific risk, the disclosure is not misleading simply because it fails to discuss the specific risk." *In re Bank of America AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013). A risk warning is only deficient if it "speaks entirely of as-yet-unrealized risks and contingencies" and fails to alert "the reader that some of these risks may already have come to fruition." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 986 (9th Cir. 2008). "In other words, where a party states that something *might* occur, that warning may be actionable because it omits that 'that something' has already occurred." *Lomingkit v. Apollo Educ. Grp., Inc.*, 275 F. Supp. 3d 1139, 1161 (D. Ariz. 2018). Contrary to Plaintiff's arguments, the relevant risk was not unique to Xinka consultation, and both broad opposition to the license and the risk that an adverse court ruling could affect the validity of the license were disclosed. Any risk from Xinka opposition was necessarily "unrealized" until the Supreme Court's July 2017 decision.

For good reason, companies are not required to inundate investors with information about every conceivable risk. *See Basic, Inc. v. Levison*, 485 U.S. 224, 231 (1998) (internal quotations omitted) (companies not obligated "to bury the shareholders in an avalanche of trivial information – a result hardly conducive to informed decisionmaking."). The Complaint acknowledges that the Xinka were not the only opponents of the mine, and protesters also raised environmental and other concerns. *See* Compl. ¶¶8, 95-96, 103, 207-208. If Tahoe had disclosed all of the Xinka-specific information in the Complaint (and any other imaginable possibility), the public statements would have inundated the market and obscured the relevant risk of court-ordered license suspension and minimized other potential risks. *See, e.g., Ansell v. Laikin*, No. CV 10-9292 PA AGRX, 2011 U.S. Dist. LEXIS 85695, *9 (C.D. Cal. Aug. 1, 2011) ("[B]y failing to mention his scheme but listing several other risks … Defendant misled

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

3

14577564

investors into believing that the Tender Offer had disclosed all known risks[.]").  Additional information about the Xinka's, or other groups' opposition to the mine for environmental, economic, religious or community reasons, adds color to the overall risk disclosed, but it does not identify a different risk.  The allegations do not show that Xinka involvement in opposition to the mine was uniquely more likely to disrupt mining operations than opposition on other grounds or from other groups, particularly in light of the series of unsuccessful legal challenges following the 2013 decision of Guatemala's Mining Ministry to grant the license.  Compl. ¶¶109-113; Resp. pp. 1, 6.  Ultimately, the fact of opposition with a general goal of reversing government action was important, not the identity of the protestors or why they were protesting.

### C. Plaintiff Cannot Avoid Tahoe's Disclosures With A Conclusory Argument That The License Was "Not Legally" Issued.

Plaintiff attempts to undercut Tahoe's disclosure about the validity of the license by arguing that the disclosure should have said the license was "not legally" issued.  Resp. pp. 10-11, 33.  However, Plaintiff identifies no statute, rule, regulation or precedent, other than ILO 169, that the Mining Ministry allegedly violated when it issued the Escobal mining license.  As to ILO 169, Plaintiff alleges no facts – just conclusions informed by hindsight – to show that the Mining Ministry incorrectly interpreted the law or improperly determined that there were not sufficient Xinka "affected directly" to necessitate consultation.  Compl. ¶50; Resp. p. 11.  Finally, Plaintiff ignores that the Supreme Court did not find that the Mining Ministry violated the law.  Instead, it reinterpreted the law and found that consideration of whether people were "affected directly" should look to a broader area beyond San Rafael Las Flores (but not as broad as Plaintiff's "Escobal Project Area").[3]  *Compare* Compl. ¶5 *with* ¶71.

_____

[3]  Plaintiff references a translation of the Supreme Court's September 8, 2017 ruling, but does not attach it for the Court to review.  Compl. ¶¶37, 71, 142, 189.  Like the cherry-picked snippets of Tahoe's disclosures, this omission is telling, and the decision cannot be inferred to support the allegations.

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

4

14577564

### D.   Instead Of Addressing Tahoe's Disclosures, Plaintiff Responds To Arguments Not Made By Defendants.

Plaintiff neglects to respond to the defects in his misstatement allegations, and instead focuses on issues not argued, namely whether the challenged public statements: 1) are "forward-looking statements," (Resp. pp. 20-22); 2) assert "truth-on-the-market" to negate reliance, (Resp. pp. 18-20); and 3) are statements of opinion, (Resp. pp. 12-13).

First, the issue is not whether Tahoe's risk disclosures trigger the PSLRA's safe harbor provision or "bespeaks caution" doctrine; the issue is whether Tahoe's risk disclosures negate Plaintiff's allegations of an actionable omission.  The risk factor disclosures quoted in the Complaint, and Tahoe's other disclosures (Mem. pp. 10-11), show that Plaintiff has not alleged an actionable failure to disclose.  *See Lomingkit*, 275 F. Supp. 3d at 1149 (D. Ariz. 2017) ("Plaintiffs cannot simply allege that an omission was material to properly allege falsity; rather, plaintiffs must show that the omission actually renders *other* statements misleading.").

Second, the motion to dismiss is not premised on a "truth on the market" defense – which relates to the reliance element of a claim – but on whether Tahoe had a *duty to disclose* any of the allegedly omitted information in the first place.  *See Cowan v. Goldcorp*, No. CV 16-6391 FMO (AFMx), 2017 U.S. Dist. LEXIS 222300, at *14 n.9 (C.D. Cal. Sep. 6, 2017) ("truth-on-the-market … applies with respect to negating the element of reliance.").  The information about the Xinka that Plaintiff faults Tahoe for failing to disclose was not uniquely known to Tahoe; therefore, Tahoe had no duty to educate investors about information already in the public domain.  *See, e.g.*, *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1246 (N.D. Cal. 1998) ("[A] company cannot be held liable for failing to educate the public about publicly known facts."); Mem. p. 12.  The Complaint is *exclusively* premised on publicly-available information, so Defendants had no duty to disclose it.  Further, the purported omission does not

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

5

14577564

make Tahoe's disclosure of the risk that caused the alleged loss misleading.  Compl. ¶154.

Third, the motion to dismiss does not argue that statements about where Xinka lived were not actionable because they were statements of opinion or puffery.  Rather, Defendants argue that Plaintiff misconstrues what those statements actually say.  *See* Mem. pp. 13-15.  In order to accept Plaintiff's allegation that statements about the number of Xinka living in the "area of the mine" were misleading, the Court has to find objective facts showing that the relevant area referenced in Tahoe's public statements was Plaintiff's expansively constructed "Escobal Project Area" – in other words an "apples-to-apples" comparison.  But on their face, none of the challenged statements makes reference to Plaintiff's definition or his constructed relevant area.  Thus, Plaintiff cannot show these statements were misleading.

### E.    The Misrepresentation Allegations Depend On Fraud By Hindsight.

The misrepresentation allegations hinge on the notion that Tahoe's public statements were misleading because they did not state the Mining Ministry's conclusion that consultation under ILO 169 was not required when disclosing that "the validity of the license … can be uncertain."  Compl. ¶154.  However, the Complaint does not include any facts showing that there was a basis for Tahoe to conclude that the consultation issue would be the rationale utilized by the Supreme Court to suspend the mining license.  Without facts, the duty to disclose argument fails.  *See Roseville Emp. Ret. Sys. V. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1109 (E.D. Wa. 2013), *aff'd* 691 F. App'x 393 (9th Cir. 2017) ("To viably plead a false or misleading statement, Plaintiff must set forth … an explanation as to why the disputed statement was untrue or misleading when made.").  Only through hindsight can Plaintiff's "omission" theory be supported.  *See* Mem. pp. 12-13.

At the time of Tahoe's public statements about the Escobal Mine, none of the subsequent events that ultimately led to the license's suspension had yet occurred.  The process

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

6

14577564

for issuing a mining license was controlled by the Mining Ministry. Compl. ¶3. It was the Mining Ministry, not Tahoe, that was responsible for interpreting ILO 169 and determining if any indigenous people, including the Xinka, needed to be consulted and what that process would entail. *Id.* ¶5. ILO 169, ratified by Guatemala, requires government bodies like the Mining Ministry to "consult the peoples concerned … wherever consideration is being given to legislative or administrative measures which may affect them directly." *Id.* ¶50. There was no guidance on what that means, or how the Mining Ministry was to determine the geographical area or other parameters of who was "directly" affected by the mine (and Plaintiff identifies none). *Id.* The Mining Ministry, in construing its obligations, concluded the Xinka did not need to be consulted. *Id.* ¶5. Tahoe deferred to that assessment since it was made by the governmental agency responsible for that decision. Plaintiff's claim that Tahoe should have rejected the Mining Ministry's determination is implausible.

On May 17, 2017, after *all* of the allegedly misleading statements were made, CALAS, an environmental organization – and not the Xinka – filed the lawsuit that resulted in the July 5, 2017 order suspending the license. *Id.* ¶¶12, 144. Plaintiff does not allege facts showing that, at the time the pre-lawsuit public statements were made, questions regarding whether the Xinka should have been consulted posed a greater risk to the validity of the license than any other environmental, regulatory, or legislative issue. The law does not require clairvoyance, and Plaintiff's theory cannot be squared with the sequence of events. Mem. p. 13.

The lynchpin of a fraud by omission claim is whether there is "a *substantial* likelihood that the disclosure of the omitted fact[s] would have been viewed by the reasonable investor as having *significantly* altered the 'total mix' of information made available." *Basic*, 485 U.S. at 231-32 (internal quotations omitted) (emphasis added). Yet, in light of Tahoe's disclosures, additional information about Xinka opposition would have been meaningless to investors in a

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

7

14577564

pre-CALAS lawsuit world.  Because the Mining Ministry concluded that consultation was not required and issued the Escobal mining license, informing investors that Xinka were protesting the decision or that "random blogs and obscure websites" criticized the government census data, could not plausibly have swayed the investing public at that time.  Resp. p. 19.

Tahoe disclosed the relevant risk, and no additional disclosure about the Xinka was necessary.  The Complaint does not sufficiently plead fraud by omission.

## II.   The Complaint Does Not Create A Strong Inference Of Scienter.

### A.   Defendants Did Not Know The License Would Be Suspended.

The scienter allegations fail because no alleged facts show that Defendants knew that: 1) the Mining Ministry "illegally" issued the Escobal mining license; 2) the Xinka people had a clear right to consultation before the license was issued; or 3) a court would later suspend the license and order consultation.  Those facts were unknown by Defendants when the challenged statements were made.  The allegations depend on Plaintiff's unsupported conclusion that ILO 169 consultation must have been conducted because: 1) Xinka lived in a broad area around the mine that he subjectively defines as relevant; 2) some Xinka opposed the Mining Ministry's decision and demanded consultation; and 3) the Supreme Court later found that the Mining Ministry's interpretation of the consultation requirement was too narrow.

### B.   Allegations About What Defendants Knew Cannot Bridge The Gap.

Knowledge that ILO 169 requires consultation when indigenous people are directly affected by government action could not create an affirmative obligation on Defendants to act when no applicable laws, rules, regulations or precedent alerted Defendants that the Mining Ministry's conclusion under the facts presented was wrong or that Tahoe was obligated to challenge that conclusion.  The allegation that Tahoe's CEO, Kevin McArthur, or unnamed directors or officers of another mining company (who are not defendants) "had detailed knowledge of the ILO 169 requirements" *as a general matter* does not establish scienter here because it does not show when or how ILO 169 was to be implemented.  Resp. p. 23.  In fact,

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

14577564

because Plaintiff cannot allege that the exploitation license for the other mine was suspended in the face of indigenous opposition and demands for consultation, these allegations actually support the opposite inference – that McArthur had a reasonable basis to believe that indigenous opposition to a mine would not lead to suspension of its license.

Similarly, the allegation that Defendants knew that Xinka tribal lands were within Plaintiff's expansive "Escobal Project Area" does not show scienter, absent facts showing that Defendants should have known that Plaintiff's defined area was the relevant one for assessing whether Xinka were directly affected (again, it must be an "apples to apples" comparison). Resp. p. 24. Prior to the July 2017 decision of the Supreme Court, Defendants had no reason to believe that new demands for consultation would be required, particularly when the Mining Ministry exercised its authority to find that consultation was not required and four years of objections and legal challenges had not invalidated the mining license. Resp. p. 6.

The allegation that Xinka participated in opposition to the mine is of no consequence to scienter. Resp. p. 25. Even if Defendants knew that Xinka participated in protests, Plaintiff does not allege that their participation alone demonstrates that the Mining Ministry violated an undefined law. Nor does it show that Xinka participation had any different significance to the issuance of the Escobal mining license than protests by other groups, particularly in light of Tahoe's disclosures that various anti-mining and other groups were engaged in ongoing protests. *See* Compl. ¶163. Finally, the vague observations of mine employees that they saw Xinka living in the area around the mine fail because, even if true, this information does not show that Defendants knew these people were entitled to consultation and that the Mining Ministry decision not to consult was in error. Resp. p. 26.

Any inference of scienter from Plaintiff's allegations must be "at least as likely as any plausible opposing inference." *Tellabs*, 551 U.S. at 328. Here, at best, the allegations create an inference that Defendants knew the validity of the license was contested, and it could be subject to suspension if the Mining Ministry's decision was later overturned by a court. That is exactly what Tahoe disclosed in its risk factors and public filings. *E.g.*, Compl. ¶154.

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

9

14577564

**C.    Plaintiff Does Not Allege Facts Showing Defendants Had Any Of The Information He Claims Is Relevant To Scienter.**

Plaintiff alleges no facts showing that Defendants were aware of the facts that he contends support scienter.    Unlike other securities cases cited by Plaintiff, there are no allegations about internal documents or reports discussing the information that allegedly made disclosures misleading.  *See, e.g., In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 478 (9th Cir. 2015) (Defendants "received an audit … detailing material internal control weaknesses" but "failed to take significant action or heighten oversight.").  In particular, there are no alleged documents that showed or even suggested that:

• the Mining Ministry incorrectly applied Guatemalan law;
• Xinka living in Plaintiff's "Escobal Project Area" were directly affected under ILO 169;
• Xinka involvement in protests posed a risk different than other groups' involvement;
• Xinka demands for consultation or petitions to international bodies were legally valid; or
• the after-the-fact CALAS lawsuit was likely to result in suspension of the license.

Plaintiff does not allege that any Defendant discussed these topics with the purported witnesses or anyone else in any identified conversation or meeting.  The Complaint lacks "allegations standing alone [that] are sufficient to create a strong inference of scienter" – the first part of the scienter inquiry.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009).

**D.    Plaintiff Cannot Show Scienter With Imputed Knowledge.**

Instead, Plaintiff improperly tries to shoehorn his allegations into the second part of the inquiry – whether a "holistic review of the same allegations … combine[s] to create a strong inference of intentional conduct or deliberate recklessness."  *Id.*  First, the facts that Plaintiff says Defendants "must have known" – about protests, requests for consultation, the location of Xinka lands and the dress and language of people in the community – were publicly available and reported, including through the sources cited in the Complaint.  They were not facts uniquely within Defendants knowledge – like operational information about the mine or private meetings with the Mining Ministry or opposition groups.  Plaintiff cannot have it both ways:  if Defendants knew the underlying facts, they also knew that the same facts were publicly available, and they had no reason to try to conceal them from investors.  Plaintiff's contrary

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

10

14577564

conclusion is unsupported argument.

Outside of the public information that Plaintiff hopes to impute to Defendants, the remaining scienter allegations are so individually deficient that they do not "holistically" create a strong inference of scienter. For example, statements that an employee saw indigenous people "in the streets often enough," or that "it's almost a fact" that indigenous people lived near the mine, are too vague to carry any legal weight. *Compare* Compl. ¶¶74-75 *with Zucco*, 552 F.3d at 997 (witness statements lacking in detail are insufficient to support an inference of scienter). Nor do the statements specify any facts showing that these people lived in a relevant area – either the one used by the Mining Ministry or Plaintiff – and they certainly do not lead to an inference that Defendants knew the license was "illegally" issued. Resp. p. 11. Further, these allegations are flawed because they assert impermissible legal conclusions that "it was evident to the whole company," and "it is surprising" that the Company would not know about local indigenous populations. *Id.*; *Zucco*, 552 F.3d at 997 (conclusory witness statements as to defendants' scienter are insufficient).

Plaintiff incorrectly argues that knowledge of all employees is legally imputed to Defendants. Resp. p. 28. If Plaintiff were correct that scienter of senior managers can be established if any employee knows a fact, it would eviscerate the PSLRA's heightened requirements. *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008). Even if Plaintiff was correct, it would not fix his deficient allegations because Plaintiff has not shown that any employee actually knew that the Mining Ministry had "illegally" issued the license. Resp. p. 11. The same is true of Plaintiff's effort to distort the "core operations" doctrine to support scienter. The doctrine is not a panacea that replaces "specific information conveyed to management and related to the fraud or other allegations supporting scienter…." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) (internal quotations omitted). Further, while information about the internal operations of the Escobal mine might be fair game under the doctrine, there is no basis for a claim that Tahoe's core operations included a superior understanding of Guatemalan law and ILO 169 to that of the Mining Ministry.

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

11

14577564

Finally, Plaintiff's arguments about motive and opportunity, the resignation of an interim CEO and Sarbanes Oxley ("SOx") certifications are rote recitations of law with no applicability here. Briefly, accepting as true allegations that Defendants' received additional compensation tied to Tahoe obtaining the license, there are no allegations that show how this compensation could have created a motive for misleading investors during the purported class period, which begins after the license was issued. The allegations about the resignation of the interim CEO include no facts to show that it was in any way tied to the Escobal mine, and the cited Twitter comments related to a different mine in Peru. *See Zucco*, 552 F.3d at 1002 (no inference of scienter unless Plaintiff alleges facts showing resignation "was uncharacteristic when compared to defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances."). The allegations about the SOx certifications do not bolster the scienter allegations because they do not independently show that any Defendant had access to information that made the certified public statements misleading. *Id.* at 1003-1004 ("[R]equired certifications under Sarbanes Oxley … add nothing substantial to the scienter calculus.").

Plaintiff's failure to plead facts creating a strong inference of scienter provides an independent basis for dismissing the Complaint.

**III. The Alleged Loss Was Caused By A Change In Interpretation Of Guatemalan Law, Not Defendants' Failure To Disclose Facts About Xinka Opposition To The Mine.**

The Complaint also fails because a reinterpretation of the consultation requirement by the Supreme Court caused Tahoe's stock's decline, not a failure to disclose. Until the July 5, 2017 decision, there was no basis to show that the mining license would be suspended under Guatemalan law for lack of consultation by the Mining Ministry. There is no regulation, statute or precedent identified in the Complaint to suggest that a determination of whether indigenous people were directly affected by the Mining Ministry's decision should include people living outside the area of influence identified in the Environmental Impact Assessment. There was no alleged finding by another Guatemalan government body or court that a government issued license of any kind should be suspended because of a failure to consult people living in communities outside that area. Even the Complaint acknowledges that the Supreme Court

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

14577564

12

suspended the license because it found, for the first time, that the Mining Ministry should have looked at a broader area (but not as broad as Plaintiff's concocted "Escobal Project Area") in determining whether there was a consultation obligation. *Compare* Compl. ¶5 *with* ¶71. The argument that the decision "corrected Defendants' misrepresentations … because it revealed the facts that were omitted from those disclosures" is belied by Plaintiff's own allegations. Resp. p. 33. Plaintiff's argument that the broader area was the law before the Supreme Court decision is based only on conclusory allegations. Even if there was a duty to disclose more about the Xinka presence or opposition to the mine – and there was not – the disclosure or non-disclosure of this information is irrelevant to the likelihood that the CALAS lawsuit was likely to result in the license suspension. Thus, there is no proximate causation.

**IV.     There Is No Controlling Person Where There Is No Viable Primary Claim.**

Plaintiff and Defendants agree that if a primary violation of Section 10(b) is not adequately pleaded, the Section 20(a) claim fails as a matter of law. *Compare* Mem. *with* Resp.

**V.     Conclusion**

The Complaint repurposes allegations in foreign litigation about the rights of the Xinka and the actions of the Guatemalan government. It does not show a violation of U.S. securities laws or give Tahoe investors a cause of action. Dismissal with prejudice is warranted.

DATED: January 30, 2019.

**FENNEMORE CRAIG, P.C.**
By:     /s/   Leslie Bryan Hart
        Leslie Bryan Hart, Esq. (SBN 4932)
        300 E. Second St., Suite 1510
        Reno, Nevada 89501
        Tel: 775-788-2228   Fax: 775-788-2229
        lhart@fclaw.com
                and
**NEAL, GERBER & EISENBERG LLP**
        (Admitted *Pro Hac Vice*)
        Scott J. Fisher, Esq.
        Karl R. Barnickol, Esq.
*Attorneys for Defendants Tahoe Resources, Inc.,*
*Elizabeth McGregor, Mark Sadler, Ronald W.*
*Clayton, and C. Kevin McArthur*

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

13

14577564

**CERTIFICATE OF SERVICE**

Pursuant to F.R.C.P. 5(b) and Electronic Filing Procedure IV(B), I certify that on January 30, 2019, a true and correct copy of the **REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT,** was transmitted electronically through the Court's e-filing electronic notice system to the attorney(s) associated with this case.  If electronic notice is not indicated through the court's e-filing system, then a true and correct paper copy of the foregoing document was delivered via U.S. Mail.

| | |
|---|---|
| Andrew R. Muehlbauer, Esq.<br>Sean P. Connell, Esq.<br>Muehlbauer Law Office, Ltd.<br>7915 West Sahara Ave., Suite 104<br>Las Vegas, Nevada 89117<br>Andrew@mlolegal.com; sean@mlolegal.com<br>*Attorneys for Plaintiff Oussama Attigui* | Nicholas Porritt, Esq.<br>Adam Apton, Esq.<br>Levi & Korsinsky LLP<br>1101 30th Street NW, Suite 115<br>Washington, D.C. 20007<br>nporritt@zlk.com; aapton@zlk.com<br>*Attorneys for Plaintiff Oussama Attigui* |
| Martin A. Muckleroy, Esq.<br>Muckleroy Lunt, LLC<br>6077 S. Fort Apache Rd., Suite 140<br>Las Vegas, NV 89148<br>martin@muckleroylunt.com<br>*Attorneys for Lead Plaintiff Kevin Nguyen* | Richard W. Gonnello, Esq.<br>Megan M. Sullivan, Esq.<br>Sherief Morsy, Esq.<br>Faruqi & Faruqi, LLP<br>685 Third Avenue, 26th Floor<br>New York, NY 10017<br>rgonnello@faruqilaw.com<br>msullivan@faruqilaw.com<br>smorsy@faruqilaw.com<br>*Attorneys for [proposed] Lead Plaintiff Kevin Nguyen* |
| John P. Aldrich, Esq. (SBN #6877)<br>Aldrich Law Firm, Ltd.<br>1601 S. Rainbow Blvd., Suite 160<br>Las Vegas, Nevada 89146<br>jaldrich@johnaldrichlawfirm.com<br>*Proposed Liaison Counsel for the Class* | Naumon A. Amjed, Esq.<br>Ryan T. Degnan, Esq.<br>Kessler Topaz Meltzer & Check, LLP<br>280 King of Prussia Road<br>Radnor, PA 19087<br>namjed@ktmc.com; rdegnan@ktmc.com<br>*Attorneys for Frederick Berliner and Proposed Lead Counsel for the Class* |

_____/s/   Pamela Carmon_____
An Employee of Fennemore Craig, P.C.

FENNEMORE CRAIG, P.C.
300 E. SECOND ST.
SUITE 1510
RENO, NEVADA 89501
(775) 788-2200

14

14577564