# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

IN RE TAHOE RESOURCES, INC. SECURITIES LITIGATION,

Case No. 2:17-cv-1868-RFB-NJK

**ORDER**

## I. INTRODUCTION

Before the Court are Defendants' Motion to Certify for Interlocutory Appeal and Motions to File Notice of New Authority. ECF Nos. 88, 90, 102. For the following reasons, the Court denies both motions.

## II. PROCEDURAL BACKGROUND

Oussama Attigui sued Tahoe Resources, Inc., Elizabeth McGregor, Mark Sadler, Ronald Clayton, and C. Kevin McArthur on July 7, 2017 on behalf of himself and all others similarly situated. ECF No. 1.Two notices of related actions were subsequently filed. ECF Nos. 34, 36. The Court granted Plaintiff Kevin Nguyen's Motion for Appointment of Counsel and Appointment of Lead Plaintiff on July 13, 2018. ECF No. 54. The Court simultaneously denied all competing motions for appointment. Id. A third notice of related cases was filed. ECF No. 55. This Court granted a Stipulation to Consolidate this matter with Sanders v. Tahoe Resources, Inc., et al., No. 2:18-cv-01041-RFB-GWF and Cabrera v. Tahoe Resources, Inc., et al., No. 2:18-cv-00924-JCM-VCF. ECF No. 57.

Lead Plaintiff filed the Amended Complaint on August 31, 2018. ECF No. 59. Defendants filed a Motion to Dismiss on October 30, 2018. ECF No. 65. Lead Plaintiff responded, and

Defendants replied. ECF Nos. 69, 75. Lead Plaintiff filed a Motion to Strike the Motion to Dismiss on December 31, 2018. ECF No. 68. Defendants responded, and Lead Plaintiff replied. ECF Nos. 73, 74. A hearing on the two pending motions was scheduled for June 19, 2019. ECF No. 77. On June 19, 2019, the Court denied and granted the Motion to Dismiss in part. The Court dismissed Defendant McGregor from the matter, finding that the allegations relating to scienter were insufficient as to McGregor. The Court allowed claim one to proceed against all remaining defendants and claim two proceed against the remaining individual defendants. The motion to strike was denied as moot. ECF No. 84. Defendants now move the Court to certify an interlocutory appeal of the Court's June 19, 2019 order. ECF No. 88. A response and reply were filed. ECF Nos. 93, 94. Defendants also moved for leave to file notice of new authority. ECF No. 102. A response and reply were also filed. ECF Nos. 103, 104.

### III. FACTUAL BACKGROUND

#### a. Background on Tahoe and the Nature of the Suit

Tahoe is a company that owns and operates mines in the Americas. At its founding, Tahoe did not have any mining assets. Tahoe completed its IPO and listed its shares on the Toronto Stock Exchange on June 8, 2010 and on the New York Stock Exchange in May 2012. Through its IPO, Tahoe acquired Goldcorp Inc.'s Escobal mining assets: an undeveloped silver mining project in Guatemala that consists of mining concessions and several mining licenses and pending license applications. These assets became Tahoe's Escobal Project. Tahoe planned to develop the Escobal Project into the world's third largest silver mining operation and use Escobal to grow the Company.

The Xinka indigenous people are Mesoamerican natives of southeastern Guatemala. Their ancestral and present-day homelands are in the departments of Santa Rosa, Jutiapa, and Jalapa—the same departments covered by the Escobal Project. Guatemala recognizes the Xinka as an independent indigenous group, and the Xinka of Santa Rosa, Jutiapa, and Jalapa are represented by their own government, the Xinka Parliament. Guatemala also recognizes the

Xinka "communal lands,"—plots of land that have been solely farmed and owned by Xinka for generations.

On September 8, 2017, Guatemala's Supreme Court suspended the renewal of two of Tahoe's two licenses, the Escobal License and the Juan Bosco License, citing Guatemalan laws that required the Guatemala's Ministry of Energy and Mines ("MEM") to consult with indigenous peoples prior to issuing a mining license.

The Lead Plaintiff subsequently alleged that Defendants Tahoe and some of its officers violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule10b-5 promulgated thereunder by making fraudulent misstatements between April 3, 2013 and August 24, 2017 inclusive.

The Lead Plaintiff further alleged that Defendants made false or misleading statements that fell into five categories : (1) statements about the issuance of the Escobal License; (2) statements about the indigenous population living in the Escobal Project Area; (3) statements about the Xinka's involvement in the protests; (4) statements about Tahoe's efforts to engage with the community living in the Escobal Project Area; and (5) statements about Tahoe's alignment with corporate social responsibility ("CSR") regimes.

### b. The Court's June 19, 2019 Order

On June 19, 2019, the Court made the following findings in response to Defendants' Motion to Dismiss:

The Court found that the Lead Plaintiff had adequately alleged that Tahoe misrepresented to the public that no indigenous people resided within the area of or were affected by the Escobal Project, that Tahoe misrepresented to the public that the license was obtained in accordance with the law and misrepresented the risk of the license being suspended by undertaking or omitting the

true magnitude of the risk from its statements, and that Tahoe misrepresented to the public that it consulted with indigenous people.

The Court further found that those allegations were significant and relevant and could proceed as a theory for liability for a securities violation because it was known to Tahoe that they would have had to engage in consultation consistent with Guatemalan law if the Xinka people were present in the Escobal Project Area.

The Court also found that the Lead Plaintiff had alleged scienter on behalf of Tahoe. The Court found that the Lead Plaintiff adequately alleged that Tahoe was aware of the indigenous population in the Escobal area, the consultation requirements under the ethical guidelines and Guatemalan law, and the opposition to the project by indigenous people.

Additionally, the Court found that the Lead Plaintiff adequately alleged that Tahoe had a financial motive for the misrepresentations. The Court found that Tahoe's alleged statements and misstatements and omissions regarding the Escobal Project underplayed the risk of the licenses being suspended and the risk of the suspension of the operations. The statements and omissions therefore allowed the stock price to remain at an inflated level for the class period because investors were unaware of the magnitude of the risk of the licenses being suspended.

The Court also found that these statements were significant in the context of loss causation, given the extent of information in the public realm about indigenous protests and indigenous opposition to the mines from a political and legal standpoint. The alleged actions of Tahoe involved its active efforts to engage indigenous people for the purpose of preventing them from invoking their legal rights. The Court therefore also found that the Lead Plaintiff adequately alleged that Tahoe's actions proximately caused the harm suffered by investors purchasing Tahoe stock.

Finally, the Court found that the claims could proceed against all of the individual defendants based upon their statements and involvement except for Defendant Elizabeth McGregor.

### IV. LEGAL STANDARD

#### a. Certifying for Interlocutory Appeal

Under 28 U.S.C. § 1292(b), the district court has the discretion to certify an order for interlocutory appeal when the court is of the opinion that the order "involves a controlling question of law, as to which there is substantial ground for difference of opinion, and that an immediate appeal may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The certification "serves the dual purpose of ensuring that [appellate] review will be confined to appropriate cases and avoiding time-consuming jurisdictional determinations in the court of appeals." U.S. v. W.R. Grace, 526 F.3d 499, 522 (9th Cir. 2008) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463.74-75 (1978)). Section 1292(b) "is to be applied sparingly and only in exceptional cases, and . . . 'the controlling question of law' requirement [should] be interpreted in such a way to implement this policy." In re Cement Antitrust Litigation, 673 F.2d 1020, 1027 (9th Cir. 1981). The party moving to certify the order bears the burden of demonstrating that the statutory requirements of 28 U.S.C. § 1292(b) are met. Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010).

"To determine if 'a substantial ground for difference of opinion' exists under §1292(b), courts must examine to what extent the controlling law is unclear." Id. "Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under the foreign law, or if novel and difficult questions of first impression are

presented.'" Id. (internal citations omitted). "That settled law that might be applied differently does not establish a substantial ground for difference of opinion." Id.

## V. DISCUSSION

The Court denies both Defendant's motion for an interlocutory order and motion for leave to file notice of new authority. The crux of all of Defendants' arguments for 28 U.S.C. § 1292(b) certification is that the Court incorrectly applied settled law to the facts of the case. While this is a perfectly adequate basis for Defendants to appeal final judgment or file a motion for reconsideration[1], it is a wholly inadequate basis for the Court to certify this order for interlocutory appellate review under 28 U.S.C. §1292(b). The Ninth Circuit is clear that the mere fact that settled law may be applied differently is insufficient for a district court to find that there is substantial ground for differences of opinion. Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010).

Defendants cite Reese v. BP Exploration (Alaska) Inc., to support their argument that matters may be certified "on which fair-minded jurists might reach contradictory conclusions." 643 F.3d 681, 688 (9th Cir. 2011). But the language of Reese itself makes clear that this only applies if the Court determines that the legal issues are novel. Reese, 643 F.3d at 688 ("Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent.").

---

[1] Defendants could have filed a motion for reconsideration to the extent that they believe the Court committed a clear error of law. Kona Enters., Inc. v. Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (motion for reconsideration may be granted if the district court committed clear error). However, they did not do so, and the time to do so has since expired. Fed. R. Civ. P. 59(e)("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.") .

The Court does not find that Defendants have adequately demonstrated that the legal issues are novel such that there is substantial ground for differences of opinion that merits immediate appellate review.

Defendants first argue that the Court's ruling is founded on an "unsustainable premise that Court should assess the Guatemalan Mining Ministry's interpretation of Guatemalan law during the four-year period before Guatemalan Supreme Court suspended the Escobal exploitation license in July 2017." ECF No. 90, Def.'s Mot. Cert. 1-2.

Accordingly, the first legal issue that Defendants want the Court to certify is "whether a U.S. court [has] the authority to determine that a foreign government's interpretation of its own law is incorrect in the absence of local legal authority supporting a contrary conclusion, and, even if it does, can that *ex post facto* determination support a securities claim?" Def.'s Repl. 7.

Defendants initially argued that "[t]his is a novel issue of law for which neither party has been able to identify a controlling case." Def.'s Repl. 7. A couple of months later however, Defendants moved the Court for leave to file notice of new authority from the Ninth Circuit in the case Royal Wulff Ventures v. Primero Mining, No.17-56367, (9th Cir. Sept. 17, 2019), which, Defendants argue, further supports its motion for interlocutory appellate review.

In Primero, the Ninth Circuit upheld a lower court's dismissal of securities claims on the grounds that the claims would require a United States court to pass judgment on the validity of a 2012 ruling by Mexico's tax authority. Id. at 1. Accordingly, the lower court found, and the Ninth Circuit agreed, that the claims were barred by the act of state doctrine, which "bars suit where (1) there is an official act of a foreign sovereign performed within its own territory; and (2) the relief sought or the defense interposed [in the action would require] a court in the United States to declare

invalid the [foreign sovereign's] official act." Id. at 13 (quoting Credit Suisse v. U.S. Dist. Court for Cent. Dist. of Cal., 130 F.3d 1342, 1346 (9th Cir. 1997)).

Plaintiff argues that Defendants did not raise the act-of-state doctrine as a legal argument in its motion to dismiss, and it therefore cannot be a basis for the Court to certify its order for interlocutory appeal. The Court agrees.

Defendants counter that the "act-of-state" doctrine "is necessarily relevant to the pending motion regardless of whether Defendants identified the act of state doctrine by name." Def.'s Repl. Suppl. Auth. 2. But Defendants did not even raise the *spirit* of the act of state doctrine in their motion to dismiss.

To be sure, Defendants articulated that the "problem with [Plaintiff's claim] is that it depends on after-the-fact knowledge about how the law in Guatemala developed . . .and that the allegations fail to state a claim because a statement must be misleading at the time it is made," and that the law forbids "fraud by hindsight." Def.'s Mot. Dismiss 12-13. Defendants also argued that "[t]he Complaint fails because it presumes that the Mining Ministry had a clear obligation under Guatemalan law to consult with Xinka people residing far from the Escobal mine before issuing the Escobal exploitation license." Def.'s Mot. Dismiss 8. But at no point in the motion to dismiss did Defendants argue that because a finding that Tahoe statements about the licenses would require the Court to assess the Mining Ministry's issuance of the license, that such a consideration would itself warrant dismissal of the claims pursuant to a general policy barring United States courts from reviewing a foreign sovereign's compliance with its own laws.

This is a distinct legal argument from fraud by hindsight, with separate legal precedents, to which Defendants did not cite a single case in support until it filed its motion for leave to submit notice of new authority. Because Defendants did not raise this specific argument, Plaintiff

understandably did not brief the issue, and it was not discussed at oral argument, or addressed by the Court in its oral ruling on the record.

While Primero is new, the act of state doctrine is not. See W.S. Kirkpatrick & Co., Inc. v. Envt'l Tectonics Corp., Intern., 493 U.S. 400, 404 (1990) (describing the Supreme Court's articulation of the act of state doctrine throughout the twentieth century). Nothing prevented Defendants from raising this argument in its motion to dismiss briefing, thus allowing both Plaintiff and the Court to fully consider its applicability to the claims at hand. This is significant because the Court cannot now consider this argument without the input from both parties, especially the Plaintiff. This motion is not the proper procedural mechanism for full consideration of dispositive motions. If the Court were to allow this to occur in this case, it would be implicitly condoning a procedure by which a losing party could put forth an argument with the benefit of seeing a court's ruling on a dispositive motion and without the prevailing party having an opportunity to fully respond within the context of the initial motion—including the possibility of amendment to the complaint. Interlocutory appeals are not meant to condone or allow such an unfair practice.

The Court will not certify for interlocutory review an issue that was never addressed, as to do so would elide the distinction between interlocutory appeals and appeals after final judgment. Barahona v. Union Pac. R. Co., 881 F.3d 1122, 1130 (9th Cir. 2018). Therefore, the Court cannot certify this question for interlocutory appellate review under 28 U.S.C. § 1292(b).

Defendants next argue that whether or not the risk disclosures in Tahoe's public filings were "boilerplate" is an issue on which reasonable jurists could disagree. Defendants concede in their opposition that the "question is not unique to the facts presented here." Def.'s Repl. 7. But the fact that reasonable jurists could disagree is not sufficient to support interlocutory appellate

review under 28 U.S.C. § 1292(b)—the legal issue must be *novel*. Defendants do not adequately illustrate that this legal question is novel.

Finally, Defendants argue that Plaintiff's generalized scienter allegations, without facts showing the individual defendants had access to non-public or internal information contradicting the company's public statements, were insufficient to satisfy heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). Defendants argue that if the undisputed legal standards that govern Plaintiff's claim had been applied, then "Plaintiff's generalized allegations of scienter would have been dismissed as patently insufficient under the prevailing law." Def.'s Repl. 8.

Defendants thus basically concede that the basis of their desire for appeal on this issue is their disagreement with the Court's application of undisputed legal standards. The Court reiterates that this is *not* the requisite standard for seeking interlocutory review under 28 U.S.C. § 1292(b) and will not certify this legal issue for interlocutory appellate review under 28 U.S.C. § 1292(b).

Because the Court will not certify any of the three legal issues identified by Defendants for interlocutory review, the Court denies the motion in its entirety.

## VI. CONCLUSION

**IT IS ORDERED** that Defendants' Motion to Certify for Interlocutory Order (ECF No. 88) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Notice of New Authority (ECF No. 102) is DENIED as moot.

**DATED**: March 23, 2020.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**